[No. 29250.    Department One.    June 2, 1944.]

J. L. KANZLER, *Appellant,* v. LINOLEUM, CARPET AND SOFT TILE WORKERS LOCAL No. 1303 *et al., Respondents.*[1]

*P. L. Pendleton* and *A. B. Bell,* for appellant.

*L. B. Sulgrove,* for respondents.

[1] Reported in 149 P. (2d) 276.

STEINERT, J.—Plaintiff brought suit to recover damages from the defendants comprising a local labor union, its president, its corresponding secretary, and five others of its members. The ground of plaintiff's action, as alleged in his complaint, was that the defendant labor union, of which plaintiff claimed to be a member, had wrongfully and illegally assessed two fines against him and, upon his refusal to pay the fines, had prevented him from obtaining employment from persons employing union labor in his field of trade. He demanded the sum of $4,517.64 as damages for such deprivation of employment. Issues were joined and the cause proceeded to trial before a jury. At the conclusion of plaintiff's evidence, the court granted defendants' motion for nonsuit and thereafter entered judgment dismissing the action. Plaintiff appealed.

The only question presented by the assignments of error is the broad general question as to whether the evidence adduced by the appellant plaintiff was sufficient to take the case to the jury. No specific principle of law is urged or relied upon by the appellant and no authorities are cited by him in his opening brief.

The pleadings and evidence in the case make frequent reference to two local labor unions and their parent international bodies. The fundamental issue between the litigant parties herein is whether the two particular local unions are in effect one and the same, as appellant contends, or whether, on the contrary, they are separate and distinct from each other, as respondents insist. The disposition of this case hinges largely upon a determination of the character of relationship which the two local unions bear to each other. With the view of promoting a clear understanding of this issue, we shall, at the outset, identify and describe the various labor organizations which figure either directly or remotely in this controversy.

Local No. 138 of Carpet and Linoleum Mechanics Union, of which appellant admittedly was a charter member, is a voluntary, unincorporated association chartered by the Upholsterers', Carpet, and Linoleum Mechanics' International Union of N. A. (hereinafter referred to as Upholsterers'

International). This parent organization, Upholsterers' International, has its headquarters in New York and is affiliated with American Federation of Labor. The subordinate Local No. 138, which was organized some considerable time prior to March, 1938, includes in its membership carpet and linoleum workers, and also shade and drapery workers. Its officers customarily have been selected indiscriminately from these various classes of workmen. At this point, it may be noted that Local No. 138, as such, was not made, and is not now, a designated party defendant in this action.

Local No. 1303 of Linoleum, Carpet, and Soft Tile Workers (mistakenly designated in appellant's complaint as Carpet and Linoleum Mechanics Union No. 1303) is also a voluntary, unincorporated association, but was chartered by and is affiliated with the Brotherhood of Painters, Decorators, and Paperhangers of America (hereinafter referred to as Brotherhood of Painters), which, in some manner not clearly indicated in the record, has in recent years extended its jurisdiction to cover certain branches of carpet and linoleum workers. The Brotherhood of Painters has its headquarters in Lafayette, Indiana, and is also an affiliate of American Federation of Labor. As appears by the caption of this case, Local No. 1303 was named as a party defendant in this action, and it is now the principal respondent on the appeal. The record does not disclose the date when Local No. 1303 was organized and there is no evidence of its existence prior to the year 1940.

It is conceded that Upholsterers' International and Brotherhood of Painters are separate and distinct from each other, with separate sets of officers, and with headquarters in different states. Each has its own constitution and its own exclusive trades jurisdiction.

Appellant's complaint is drawn, and proceeds throughout, upon the theory that Local No. 1303 is the successor in interest of Local No. 138, and that the two locals are therefore in effect one and the same, thereby making Local No. 1303 liable for the alleged wrongful acts of Local No. 138 as hereinafter related. This theory is emphatically controverted and strenuously resisted by the respondents.

Proceeding upon the theory just stated, appellant bases his complaint upon three general charges against the respondents: (1) that sometime about the month of May, 1938, respondents (identified as Local No. 138 and members thereof), without giving appellant an opportunity to be heard or to defend, wrongfully and illegally imposed two fines against him and thereafter blacklisted him from working at his trade as a member of organized labor; (2) that such fines and blacklisting were the result of a conspiracy on the part of the respondents (as above identified) against the appellant; and (3) that, although the fines were subsequently canceled, respondents (latterly identified as Local No. 1303 and members thereof) refused to admit appellant into Local No. 1303, unless and until he paid an initiation fee of one hundred dollars, which he refused to do because of his alleged rightful membership in Local No. 138.

The evidence in the case consists solely of appellant's testimony and copies of the constitutions of the two parent organizations, Upholsterers' International and Brotherhood of Painters, which copies were admitted as exhibits and became a part of the record. In our consideration of the evidence, we shall deal with the alleged charges separately and in the order set forth above. The facts with respect to the first charge, as shown by appellant's testimony and accompanying exhibits, are as follows:

Appellant, whose former occupation was that of a carpet and linoleum mechanic, was a charter member of Local No. 138. Prior to March, 1938, he had been its treasurer and business agent, had at all times been a very active official thereof, had attended many of its meetings, and was conversant with the manner in which it functioned. In the month of March, 1938, at about the time his term of office as treasurer expired, Local No. 138, claiming that he had refused to turn over to it certain books pertaining to the office, imposed a fine of twenty-five dollars against him. This action was taken at a meeting which appellant had not attended, and he has at all times denied that he ever refused to turn over the books. He admitted, however, that, al-

though he did not pay the fine, the local union nevertheless permitted him for several months to continue his work as a member of that organization.

Sometime prior to the incident just referred to, another matter was in course of development which ultimately caused a further breach between the appellant and Local No. 138. In the fall of 1936 or in the spring of 1937, the local had been having some difficulty with an employer because of his alleged unfairness to organized labor. During that controversy, appellant, at the instance of Local No. 138, had purchased and distributed a quantity of "throwaway" cards publicizing the employer's unfairness. In consequence of that activity, the employer had threatened suit against the local. The controversy continued for over a year, but, in the early part of May, 1938, it was settled satisfactorily to both the employer and the local union.

After those differences had been fully composed and the trouble with the employer had come to an end, Local No. 138 orally charged the appellant with having continued to scatter the "throwaway" cards after and despite the settlement with the employer, and, for such alleged unauthorized conduct on the part of the appellant, the local union assessed a fine of one hundred dollars against him in the month of May of that same year. The fine was assessed at a meeting which appellant likewise had not attended and in the face of his prior denial that he had committed the alleged act.

Both of the fines above mentioned were imposed at informal hearings held by Local No. 138 and without any written charges being preferred against appellant; however, the fines were imposed by authority of the constitution of Upholsterers' International, the parent body of Local No. 138.

On the second day following the imposition of the second fine, the secretary of Local No. 138 notified appellant that he could no longer work at his trade as a member of the union unless and until he paid both fines. Neither fine was ever paid, and as a consequence appellant was "thrown out" of Local No. 138. A week or two later, appellant wrote a letter to the president of Upholsterers' International at

New York, complaining of the action taken by Local No. 138. Nothing resulted from the correspondence, however, and appellant did not take any formal appeal from the action of the local, in the manner prescribed by the constitution of the parent international body.

According to appellant's testimony, he was unable to get employment, except at various odd jobs, from June, 1938, until March, 1940, because of the foregoing action which Local No. 138 had taken against him. The damages flowing from this loss of employment he computed at over four thousand dollars. Thereafter, in April, 1940, he took out membership in a "mill union," and at the time of the preparation of his complaint, in September, 1940, and at the time of the trial of this action, in October, 1943, he was working in a Tacoma mill.

In the meantime, and, so far as the record discloses, in the early part of 1940, Local No. 1303 was organized. A number of the members of Local No. 138, including the individual respondents herein, thereupon transferred their membership from that local into Local No. 1303. Just why and how that was done does not appear from the evidence. At any rate, at or about the time of this transfer of membership, appellant renewed his efforts to have the foregoing fines by Local No. 138, and his expulsion from that body, set aside. Conceiving that the two local unions were in effect one and the same, and that jurisdiction over them was then vested in Brotherhood of Painters, he sent a "notice" to the Brotherhood at Lafayette, Indiana, requesting that *Local No. 1303* be required to put in writing the charges upon which he had been fined in March and May, 1938. In response to that request, the international vice-president of the Brotherhood of Painters called on him and later made arrangements for a meeting of Local 1303, which appellant was permitted to attend.

At that meeting, the matter of appellant's alleged grievance was fully discussed, and appellant then expressed his willingness to "forget" what Local No. 138 of Upholsterers' International had done, and to start over again with Local No. 1303. The latter, in turn, agreed to disregard the ac-

tion taken by Local No. 138 and to admit appellant into Local No. 1303 upon payment by him of the regular initiation fee of one hundred dollars. Appellant, however, refused to pay the required initiation fee, because, as he claimed, the respondent individuals had been admitted into Local No. 1303 without payment of such fee, while he had not been accorded that privilege. In consequence of his refusal to pay the initiation fee, appellant was never accepted as a member of Local No. 1303. Some months later, he commenced this action.

Appellant did not bring his action, nor does he now seek relief, against Local No. 138, which is under the jurisdiction of Upholsterers' International. Hence, it is unnecessary for us to consider the effect of appellant's failure to appeal to that parent international in the manner prescribed by its constitution. The purpose of appellant's action was to obtain judgment against Local No. 1303, its officers, and certain of its members, upon the theory that the two locals are one and the same entity, or that Local No. 1303 is but the successor in interest of Local No. 138. His evidence, however, establishes conclusively that such is not the fact.

The two local unions are entirely separate and distinct. They were chartered by, and owe their allegiance to, different parent organizations which, in turn, have different headquarters, different sets of officers, different constitutions, and different fields of jurisdiction. In fact, the only point of contact between the two locals, as such, is that they are both affiliated with American Federation of Labor. This is not a case of a mere change of name of a union, nor is it one where the entire membership of one organization has transferred its affiliation to, and thereby composes, another organization. On the contrary, both local unions were still in existence as separate organizations at the time of the trial of the present action. It is true, as appellant's evidence reveals, that seven former members of Local No. 138 transferred their membership to Local No. 1303. How many other members belong to either of the two locals is not disclosed. The secession of even a majority of the members of a local union, however, does not work a dissolution of that

union, so long as the number of members remaining therein equals or exceeds the number required by the organic law of the parent body to constitute a local union. See *Local No. 2508 Lumber & Sawmill Workers v. Cairns,* 197 Wash. 476, 85 P. (2d) 1109; *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers of America,* 197 Wash. 491, 85 P. (2d) 1099.

Since Local No. 1303 was, and is, entirely separate and distinct from Local No. 138, the one cannot be held liable for the acts or obligations of the other. For the same reason, Local No. 1303 would have no authority to reverse or modify any former action taken by Local No. 138 with respect to the appellant. The most that Local No. 1303 could do under the circumstances would be to ignore the action taken by Local No. 138, if it saw fit to do so, as it apparently did, and, if it were not inhibited by the laws or authority of its parent body, admit him into its own membership. This it was willing to do upon payment by appellant of the required initiation fee. Appellant's status in this case is that of an individual who has been fined and expelled by the local union of which he was a member but seeks relief from a totally different local union with which he is not, and never has been, affiliated.

If Local No. 1303, as an organization, cannot be held liable for the acts of Local No. 138, then, for the same reasons, the officers and members, as such, of the former cannot be held liable for the acts of the latter. We therefore hold that appellant's evidence was insufficient, as against Local No. 1303, to support the charge of illegal imposition of fines against him or of unlawfully depriving him of employment.

Appellant's second charge is that of conspiracy on the part of the respondents to inflict upon him the damages of which he complains. Neither the pleadings nor the evidence submitted by the appellant disclose any substantial element of conspiracy. On this subject, appellant contents himself with saying, in his brief, that no overt act, other than respondents' attitude in refusing him admission into Local No. 1303, is necessary to establish conspiracy, and that

the imposition of the two alleged wrongful fines is sufficient in itself to make a *prima facie* case of conspiracy against him.

With respect to the first of these propositions, it is sufficient to say that the alleged refusal to admit appellant into Local No. 1303 occurred almost two years after the imposition of the fines. Besides, as has already been stated, the fines were imposed by Local No. 138, which had no legal relationship to Local No. 1303.

As to appellant's second proposition, it is sufficient to say that, although the individual respondents herein were members of Local No. 138 at the times the fines were imposed, there is no showing that they voted in favor of such imposition, or that they participated in that action, or that they were even present when that action was taken. Therefore, appellant's second charge likewise fails.

Appellant's third charge relates to respondents' alleged refusal to admit him as a member of Local No. 1303. The facts in that connection have already been stated. Appellant's contention is not supported by the evidence. He was not refused admission, but was merely required to pay the customary initiation fee, which he declined to do. Local No. 1303 cannot be required to admit appellant, or anyone else, into its membership without his paying the regular, prescribed initiation fee. Although appellant asserts that "others" had not paid the fee, that is not a matter of concern to him. Aside from that fact, appellant's evidence does not establish any right in him to demand admission to membership in Local No. 1303 either without, or upon, payment of the initiation fee. That is a matter for the local itself to determine. However, it offered to admit him on terms which he refused to accept. We hold, therefore, that his third charge is not sustained by the evidence.

The judgment is affirmed.

SIMPSON, C. J., BEALS, JEFFERS, and GRADY, JJ., concur.